# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CURTIS KELLY,

                    Petitioner,                    Case Number: 05-CV-71124

v.                                                 HON. NANCY G. EDMUNDS

JAN TROMBLEY,

                    Respondent.

_____/

## OPINION AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Curtis Kelly has filed a *pro se* petition for a writ of habeas corpus under 28

U.S.C. § 2254. Petitioner, who is currently incarcerated at the Saginaw Correctional Facility in

Freeland, Michigan, challenges his convictions for second-degree murder, felon in possession of

a firearm, and possession of firearm during the commission of a felony. For the reasons set forth

below, the Court denies the petition.

### I. Background

Petitioner's convictions arise out of the murder of Derrick Duncan in his home in the city

of Detroit. Delores Aldrige testified that she and Duncan had been involved in a relationship for

twenty-seven years. On March 23, 2002, in the late afternoon, she, Duncan, and their daughter

were at their home. Ms. Aldridge testified that she was in the kitchen when she heard noises

coming from the front room. She went to the front room and found Duncan lying on the floor.

A man she identified as Petitioner was standing over him. She testified that Petitioner was

known as "Shorty." Petitioner ordered her to sit down, which she did because Petitioner was

carrying a gun.

Ms. Aldridge testified that, after she sat down, another man, known as "Unk" entered the home. Unk taped Ms. Aldridge's hands with duct tape. Petitioner demanded money and fired a shot into the floor. Ms. Aldridge's twelve-year-old daughter then entered the room. She was hysterical. Petitioner ordered her to be quiet or he would shoot her parents. Duncan gave Petitioner $700, but he demanded more. Petitioner then brought Duncan upstairs. Ms. Aldridge heard a lot of noise upstairs. She heard the men return downstairs to the kitchen, and then heard gunshots. Ms. Aldridge testified that Petitioner said, "[He's] croaking, let's get out of here." Tr., Vol. II., p. 30. Petitioner and Unk then fled.

Shantell Aldridge testified that when she arrived home on March 23, 2002, she found her mother and sister screaming. She saw her father in the upstairs bedroom bleeding. She testified that he said, "Shorty shot me." Tr., Vol. II, p. 116.

Police Investigator Barbara Higgins testified that she interviewed Petitioner on April 6, 2002, in connection with the shooting. Petitioner gave a statement in which he admitted to going to Derrick Duncan's house on the night of the murder to purchase cocaine. Petitioner stated that, after he entered the front door, Duncan pulled a gun and ordered Petitioner to give him his money. Duncan shot into the floor twice. Petitioner stated that he and Duncan then became engaged in a struggle over the gun. The gun discharged. When Petitioner realized that Duncan had been shot, he grabbed the gun and fled.

Petitioner did not testify in his own defense.

2

## II. Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of second-degree murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony. On September 17, 2002, he was sentenced as a third habitual offender to concurrent terms of eighteen to thirty years imprisonment for the murder conviction, and one to five years imprisonment for the felon in possession conviction, to be served consecutively to a sentence of two years imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I.   Defendant was denied due process and his right to a properly instructed jury by the legal preclusion of instructions on manslaughter; alternatively, defendant was denied his right to effective assistance of counsel by his trial attorney's failure to request instructions on manslaughter which were supported by the evidence.

II.   Defendant's conviction is a denial of due process where the evidence was insufficient to support the verdict of guilty of second-degree murder.

III.   Defendant was denied a fair trial and his right to present a defense by the loss of potentially exculpatory physical evidence prior to trial; defendant was denied effective assistance of counsel by his trial attorney's failure to move to dismiss on this basis or to request an instruction.

IV.   The prosecution denied defendant a fair trial by shifting the burden of proof, adversely commenting on his right to remain silent, denigrating and misstating the defense, and exposing the jury to evidence of an unrelated charge against Mr. Kelly.

The Michigan Court of Appeals affirmed Petitioner's convictions. People v. Kelly, No. 246228 (Mich. June 24, 2004).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, presenting the same claims raised before the Michigan Court of Appeals.

3

Petitioner then filed the pending petition for a writ of habeas corpus, presenting the same claims presented in state court.

### III.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law.  Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1)[1]; *see also* Cremeans v. Chapleau, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary

_____

[1]  28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

4

to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." Id. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 409-11.

## IV.

### A. Jury Instructions

In his first claim for habeas corpus relief, Petitioner argues that he was denied his right to a properly instructed jury because the jury was not instructed on the offenses of voluntary and

5

involuntary manslaughter.  He further alleges that his attorney was ineffective in failing to request these instructions.  Petitioner asserts this ineffective assistance of counsel claim as a separate claim for habeas corpus relief and as cause to excuse his default for failing to request these instructions.

Respondent argues that this claim is procedurally defaulted.  "Procedural default is not a jurisdictional bar to review on the merits."  Howard v. Bouchard, 405 F.3d 459, 476 (6th Cir. 2005).  Where it is easier for a court on habeas review to address the merits of an allegedly defaulted claim than to undertake a procedural default analysis, the court, in the interest of judicial efficiency, may address the merits of the claim without examining the procedural default claim.  *See* Forensic v. Birkett, __ F. Supp. 2d ___, 2006 WL 2473469 *10 (E.D. Mich. Aug. 25, 2006).  In the pending case, the Court determines that it is easier to address the merits of Petitioner's jury instruction claim.[2]

While the failure to instruct on a lesser included offense can constitute constitutional error in a capital case, Beck v. Alabama, 447 U.S. 625, 638 (1980), the Supreme Court has specifically declined to decide whether such a requirement applies in non-capital cases.  Id. n.14.  Habeas relief may only be granted where a state court's decision is "contrary to or involved an unreasonable application of clearly established Federal law."  28 U.S.C. § 2254(d).  Petitioner cannot show that the state court's failure to instruct on lesser included offenses was contrary to or an unreasonable application of Supreme Court precedent where Supreme Court precedent does not require a lesser included offense instruction in non-capital cases.

---

[2]  The Court, therefore, need not address Petitioner's claim that his attorney's ineffective assistance excuses his procedural default.  Instead, the Court will address the ineffective assistance of counsel claim *infra* as an independent claim for habeas corpus relief.

6

### B.  Alleged Ineffective Assistance Counsel

In addition to his claim that the trial court should have *sua sponte* instructed the jury on manslaughter, Petitioner argues that his attorney was ineffective in failing to request involuntary and voluntary manslaughter instructions.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  Id. at 687.  Second, a petitioner must show that counsel's deficient performance prejudiced petitioner.  To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

The Supreme Court emphasized that, when considering an ineffective assistance of counsel claim, the reviewing court should afford counsel a great deal of deference:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Id. at 689 (internal citations omitted).

7

The Michigan Court of Appeals rejected Petitioner's ineffective assistance of counsel claim.  The state court stated, in pertinent part:

> "A defendant that claims he has been denied the effective assistance of counsel must establish (1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." [People v. Sabin (*On second remand*), 242 Mich. App. 656, 658-659; 620 N.W.2d 19 (2000)]. "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise."  People v. Rodgers, 248 Mich. App. 702, 714; 645 N.W.2d 294 (2001).
>
> Defendant claims that his counsel was ineffective for failing to request the trial court to instruct the jury on the necessarily lesser included offenses of voluntary and involuntary manslaughter. . . . Our Supreme Court has held that "when a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence." [People v. Mendoza, 468 Mich. 527, 540-542; 664 N.W.2d 685 (2003)].  Even assuming, without deciding, that a rational view of the evidence would have supported a jury instruction on voluntary or involuntary manslaughter, defendant did not meet his burden of showing a reasonable probability that, but for the error, the outcome of the proceedings would have been different.  That is, defendant did not show the existence of a reasonable probability that, had defense counsel requested and received jury instructions on manslaughter, the jury would have found him guilty of manslaughter instead of second-degree murder. . . . Defendant has not overcome the presumption that counsel rendered effective assistance. . . .
>
> Moreover, it is likely that defense counsel determined, as a matter of trial strategy, that he should not request an instruction on the lesser included offenses of voluntary manslaughter and involuntary manslaughter on the ground that if the jury believed defendant's version of events, it would simply acquit defendant of the charged offense.  We decline to second-guess counsel regarding matters of trial strategy, and the fact that a strategy may not have worked does not mandate a conclusion that the strategy constituted ineffective assistance of counsel. . . .

Kelly, slip op. at 2-3.

The Michigan Court of Appeals, although not citing Strickland, cited case law which clearly incorporated the Strickland standard.  The Sixth Circuit Court of Appeals has held that, on habeas review, a petitioner  may not establish that his attorney was ineffective for failing to

request a lesser-included offense instruction where the evidence was sufficient to support the greater offense.  Fischer v. Morgan, 83 Fed. Appx. 64, 66-67 (6th Cir. 2003).  The Michigan Court of Appeals reasoned that because the evidence was sufficient to support Petitioner's conviction for second-degree murder, Petitioner was not prejudiced by counsel's decision not to request the instruction.   Further, the Michigan Court of Appeals concluded that Petitioner had failed to show that his attorney's decision was not the result of sound trial strategy.  Moreover, defense counsel's decision not to request manslaughter instructions was consistent with a strategy seeking acquittal on the basis of self-defense or accident. *Accord* Lewis v. Russell, 42 Fed. Appx. 809, 810 (6th Cir. 2002).

    For these reasons, the Court concludes that the Michigan Court of Appeals' resolution of this issue was neither contrary to nor an unreasonable application of clearly established Federal law, nor was it based upon an unreasonable determination of the facts in light of the evidence.

### C.  Sufficiency of the Evidence

    In his second claim for habeas corpus relief, Petitioner argues that insufficient evidence was presented to sustain his second-degree murder conviction.  Petitioner argues that the facts do not support a finding of malice.

    In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319 (emphasis in original).  Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the Jackson standard was contrary to or an unreasonable

application of Supreme Court precedent.  In making this determination, this Court must afford

the state court's findings of fact a presumption of correctness unless it is established by clear and

convincing evidence that the factual determination in the state court was erroneous.  28 U.S.C. §

2254(e)(1); <u>West v. Seabold</u>, 73 F.3d 81, 83 (6th Cir. 1996), *cert. denied*, 116 S. Ct. 2569 (1996).

The last state court to issue a reasoned opinion regarding Petitioner's sufficiency of the

evidence claim, the Michigan Court of Appeals, stated, in relevant part:

> [D]efendant claims that there was insufficient evidence to prove that he
> committed the crime with malice, and without justification or excuse.  We
> disagree.  In determining whether sufficient evidence has been presented to
> sustain a conviction, we view the evidence in a light most favorable to the
> prosecution and determine whether a rational trier of fact could have found that
> the essential elements of the crime were proven beyond a reasonable doubt.
> <u>People v. Wolfe</u>, 440 Mich. 508, 515; 489 N.W.2d 748 (1992).  We are required
> to draw all reasonable inferences and make credibility determinations in support
> of the jury verdict.  <u>People v. Nowack</u>, 462 Mich. 392, 400; 614 N.W.2d 78
> (2000).
>
> "The offense of second-degree murder consists of the following elements: '(1) a
> death, (2) caused by an act of defendant, (3) with malice, and (4) without
> justification or excuse.'" <u>People v. Mayhew</u>, 236 Mich. App. 112, 125; 600
> N.W.2d 370 (1999), *quoting* <u>People v. Goecke</u>, 457 Mich. 442, 463-464; 579
> N.W.2d 868 (1998).  "The element of malice is defined as 'the intent to kill, the
> intent to cause great bodily harm, or the intent to do an act in wanton and wilful
> disregard of the likelihood that the natural tendency of such behavior is to cause
> death or great bodily harm.'" <u>Id.</u>, *quoting* <u>Goecke</u>, *supra* at 464. . . . "[T]he facts
> and circumstances of the killing may give rise to an inference of malice."  <u>People
> v. Carines</u>, 460 Mich. 750, 759; 597 N.W.2d 130 (1999). . . . "The offense of
> second-degree murder does not require an actual intent to harm or kill, but only
> the intent to do an act that is in obvious disregard of life-endangering
> consequences."  <u>Id.</u>  "Malice may also be inferred from the use of a deadly
> weapon."  <u>Carines</u>, *supra* at 759.
>
> Here, evidence showed that the victim, Derrick Duncan, was at home with his
> girlfriend, Delores Aldridge, and their twelve-year-old daughter, Nicole, when
> defendant came over.  Aldridge testified that after hearing "bumping noises," she
> went into the front room and found defendant standing over Duncan, pointing a
> gun at him.  Defendant let a man named "Unk" into the house, and ordered him to
> bind Aldridge's hands behind her back with duct tape.  Duncan's hands were also

duct taped.  Defendant fired two shots into the floor and demanded money,
eventually taking $700 from Duncan's pocket.  Defendant ordered Duncan to tell
him where his gun was located, and ordered Unk to retrieve it.  After imploring
defendant not to hurt Aldridge and Nicole, defendant and Duncan, hands still
bound, went upstairs.  Aldridge heard "a lot of bumping," and when the two came
back downstairs, Aldridge heard three gunshots come from the kitchen.
Defendant said, "that n-gga" croaking, let's get outta here," and ran out the front
door with Unk.  Before Duncan died from a gunshot would to his leg, he told
Aldridge and the police that defendant shot him.

In defendant's statement to police, he first claimed that he was at Duncan's house
to buy drugs, when Duncan pulled a gun on him and demanded money.
Defendant maintained that Duncan was the person who fired two shots into the
floor, and that when they got into a fight, the gun went off, hitting Duncan.
Duncan then dropped the gun, and defendant took it and fled.  However,
defendant also stated that he "didn't meant to kill [Duncan]," and that he was
"just trying to get [Duncan] up off" of him.

Here, defendant's use of a gun can be used to infer malice, *i.e.,* that he intended to
kill, cause great bodily harm, or fire a gun in wanton and willful disregard of the
likelihood that the natural tendency f his behavior was to cause Duncan death or
great bodily harm.  Although defendant's account of events differed from the
accounts of the prosecution witnesses, we must, in considering proofs in a light
most favorable to the prosecution, avoid weighing the proofs or determining what
testimony to believe. . . . Rather, we must resolve all conflicts in favor of the
prosecution.  The jury was free to believe the prosecution witnesses' version of
events, that defendant did not have a justification or excuse for killing Duncan,
and disbelieve defendant's version of events, that Duncan was accidentally shot
during their tussle.  Because a rational trier of fact could have found that the
essential elements of second-degree murder were proven beyond a reasonable
doubt, defendant is not entitled to relief on this basis.

Kelly, slip op. at 1-2.

The Court finds this resolution of Petitioner's sufficiency of the evidence claim was

neither contrary to nor or an unreasonable application of clearly established federal law.  The

Court of Appeals' decision cited case law which plainly incorporated the Jackson standard and

explained and supported its conclusion that a rational trier of fact could have found Petitioner

guilty beyond a reasonable doubt.  Petitioner has not presented any new evidence to show that

11

the state court's findings of fact were erroneous.  As the Michigan Court of Appeals noted, the jury reasonably could have chosen to believe the prosecution witnesses' accounts of the shooting rather than Petitioner's.  Petitioner provides no information which would call their credibility into doubt.  Further, "the assessment of the credibility of witnesses is generally beyond the scope of review" in a federal habeas corpus proceeding.  Schlup v. Delo, 513 U.S. 298, 330 (1995).  Therefore, according the state court's factual findings a presumption of correctness, *see* 28 U.S.C. § 2254(e)(1), this Court concludes that the state court of appeals' decision that all of the elements of the crime were satisfied did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

### D.  Destruction of Evidence

Petitioner next alleges that he is entitled to habeas corpus relief because he was deprived of his right to a fair trial and his right to present a defense when the police destroyed potentially exculpatory evidence.  Police lost the victim's clothing and photographs of the crime scene prior to trial.  Petitioner also alleges that the trial court erred in not instructing the jury that it could infer that the lost evidence would have been favorable to Petitioner and that his attorney was ineffective in failing to move to dismiss the case on the basis of the lost evidence and in failing to request an adverse inference instruction.

The Due Process Clause requires that the State disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." California v. Trombetta, 467 U.S. 479, 485 (1984). "Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a

12

reasonable doubt about the defendant's guilt." Id.  However, "the Due Process Clause requires a different result when . . . deal[ing] with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant."  Arizona v. Youngblood, 488 U.S. 51, 56 (1989).  The state's duty to preserve evidence is "limited to evidence that might be expected to play a significant role in the suspect's defense."  Trombetta, 467 U.S. at 488 (1984).  "To meet this standard . . . evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  Id. at 489.  Further, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."  Youngblood, 488 U.S. at 58.

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, held that Petitioner's rights were not violated because the police failed to preserve the evidence.  Although not specifically citing Youngblood and Trombetta, the state court clearly applied the standard articulated in those cases.  The Michigan Court of Appeals held that Petitioner failed to show that the police acted in bad faith or that the evidence was exculpatory. The Court of Appeals reasoned:

> "Absent the intentional suppression of evidence or a showing of bad faith, a loss of evidence that occurs before a defense request for its production does not require reversal."  People v. Johnson, 197 Mich. App. 362, 365; 494 N.W.2d 873 (1992).  Additionally, "[d]efendant bears the burden of showing that the evidence was exculpatory or that the police acted in bad faith."  Id.  Here, defendant does not argue that the evidence was intentionally suppressed or that the police acted in bad faith.  Nor does defendant demonstrate that the evidence was exculpatory. That is, evidence of close range firing would also be consistent with the prosecution's theory of the case that defendant shot Duncan purposefully.  Where, as here, "the state has failed to preserve evidentiary material of which no more

13

> can be said than that it could have been subjected to tests the result of which might have exonerated the defendant, the failure to preserve the potentially useful evidence does not constitute a denial of due process unless a criminal defendant can show bad faith on the part of the police."  <u>People v. Leigh</u>, 182 Mich. App. 96, 98; 451 N.W.2d 512 (1989).

<u>Kelly</u>, slip op. at 4.

The Court of Appeals considered the facts in light of Petitioner's claim that the evidence was exculpatory, and concluded that evidence of close range firing would also have been consistent with the prosecution's theory of the case and that the police did not act in bad faith. Petitioner has not presented any new evidence to show that the state court's findings of fact were erroneous.  Therefore, this Court concludes that the state court of appeals' decision did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Petitioner also claims that the trial court erred in failing to give an adverse inference instruction.  An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" <u>Estelle v. McGuire</u>, 502 U.S. 62, 72 (1991) *(quoting* <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973)).  "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned', but that it violated some [constitutional] right'".  <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974).   The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record."  <u>Estelle</u>, 502 U.S. at 72 (*quoting* <u>Cupp</u>, 414 U.S. at 147).  The Michigan Court of Appeals held that the trial court did not err in failing to give the instruction.  Petitioner has failed to show that the failure to give an adverse inference instruction so infected the entire trial as to

14

violate due process.

Finally, Petitioner claims that his trial attorney was ineffective in failing to move to dismiss the case based upon the lost evidence and failing to request an adverse inference instruction. As discussed above, to establish ineffective assistance of counsel, a petitioner must show that counsel's performance was "outside the wide range of professionally competent assistance" and that Petitioner was prejudiced by counsel's errors. Strickland, 466 U.S. at 689. The Michigan Court of Appeals denied this claim, holding that both of these motions would have been futile and, therefore, counsel was not ineffective for failing to make futile motions. Kelly, slip op. at 4. Petitioner has failed to show that the state court's conclusion that these motions would have been futile was incorrect. Therefore, he has failed to show that he was prejudiced by his attorney's failure to file such motions. And, habeas relief shall be denied on this claim.

### E. Alleged Prosecutorial Misconduct

Finally, Petitioner alleges that he is entitled to habeas corpus relief because the prosecutor engaged in misconduct. Specifically, Petitioner alleges that the prosecutor committed misconduct by: (i) shifting the burden of proof; (ii) adversely commenting on his right to remain silent; (iii) denigrating and misstating the defense; (iv) exposing the jury to evidence of an unrelated charge against him; and (v) improperly arguing facts not in evidence.

Respondent argues that this claim is barred from review because it is procedurally defaulted. The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or

demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner files an untimely appeal, Coleman, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict.  United States v. Frady, 456 U.S. 152, 167-69 (1982); Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir. 1996).  Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent."  Rust, 17 F.3d at 162; Murray v. Carrier, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule.  Warner v. United States, 975 F.2d 1207, 1213-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 932 (1993).  Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim.  Coleman, 501 U.S. at 729-30.  If the last state court from which the petitioner sought review affirmed the conviction both on the merits, and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition.  Rust, 17 F.3d at 161.  If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the

16

federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

This Court begins its analysis of whether Petitioner's prosecutorial misconduct claims are procedurally defaulted by looking to the last reasoned state court judgment denying Petitioner's claim. *See* Coleman, 501 U.S. at 729-30. The last state court to address these claims, the Michigan Court of Appeals, held that Petitioner's claim that the prosecutor improperly denigrated the defense and defense counsel was not preserved for appellate review because Petitioner failed to object to the prosecutor's conduct at trial. Kelly, slip op. at 3. The Sixth Circuit Court of Appeals has held that the failure to object rule is regularly followed by Michigan courts in the context of prosecutorial misconduct claims. Simpson v. Jones, 238 F.3d 399, 408 (6th Cir. 2000); Toler v. McGinnis, 23 Fed. Appx. 259, 269 (6th Cir. 2001). Accordingly, the state court's judgment clearly rested on a procedural bar and the doctrine of procedural default is invoked with respect to this claim. The Michigan Court of Appeals did not find that the remaining prosecutorial misconduct claims were barred from review because of a state procedural rule. Therefore, they are not barred from habeas review.

The Court first considers the merits of the prosecutorial misconduct claims to which procedural default is inapplicable.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." Caldwell v. Russell, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of

17

the circumstances." <u>Angel v. Overberg</u>, 682 F.2d 605 (6th Cir. 1982). The Court must examine

"'the fairness of the trial, not the culpability of the prosecutor.'" <u>Pritchett v. Pitcher</u>, 117 F.3d

959, 964 (6th Cir. 1997), (*quoting* <u>Serra v. Michigan Department of Corrections</u>, 4 F.3d 1348,

1355 (6th Cir. 1993)).

The Sixth Circuit has identified the factors a court should consider in weighing the extent

of prosecutorial misconduct:

> In every case, we consider the degree to which the remarks complained of have a
> tendency to mislead the jury and to prejudice the accused; whether they are
> isolated or extensive; whether they were deliberately or accidentally placed before
> the jury, and the strength of the competent proof to establish the guilt of the
> accused.

<u>Id.</u> at 964 (*quoting* <u>Angel v. Overberg</u>, 682 F.2d 605, 608 (6th Cir. 1982)).

First, Petitioner claims that the prosecutor improperly shifted the burden of proof in

closing argument when he stated that defense counsel failed to present evidence supporting

defendant's version of events which defense counsel had set forth in his opening statement. The

Michigan Court of Appeals held that the prosecutor's comment did not constitute misconduct

because a prosecutor is free to comment on defense counsel's failure to prove what he promised

to prove in his opening statement. <u>Kelly</u>, slip op. at 5. The Court agrees that pointing out the

defense's inconsistencies or failure to produce promised evidence does not amount to an attempt

by the prosecutor to shift the burden of proof. Moreover, the trial court's instructions to the jury

unambiguously established that the prosecutor bore the burden of proof with respect to each

element of the crimes. Therefore, Petitioner has failed to show prosecutorial misconduct with

respect to this claim.

Second, Petitioner claims that the prosecutor commented adversely on Petitioner's post-

18

arrest silence when, in his rebuttal to defense counsel's closing statement, the prosecutor stated that "Mr. Cunningham [defense counsel] hasn't explained these things to you.  He hasn't explain[ed] anything that would cause you to do anything other than to hold Mr. Kelly responsible for what he did."  Tr., Vol. III, p. 68. The use of a defendant's post-arrest silence violates the Due Process Clause.  Doyle v. Ohio, 426 U.S. 610, 619-20 (1976).  The Michigan Court of Appeals held that the prosecutor's comment was not improper because the prosecutor was commenting on Petitioner's failure to rebut the evidence presented by the State rather than his silence.  The Court finds that the Michigan Court of Appeals' conclusion was not contrary to or an unreasonable application of Supreme Court precedent.

Petitioner also claims that the prosecutor committed misconduct in exposing the jury to evidence of an unrelated charge against Petitioner.  The Michigan Court of Appeals held that because the testimony of the unrelated conduct was elicited by defense counsel during cross-examination of a police officer, the prosecutor was not responsible for the testimony.  The Court finds that the state court's holding was not contrary to or an unreasonable application of Supreme Court precedent.

Petitioner next claims that the prosecutor improperly argued facts not in evidence when he stated that the crime scene photographs and victim's clothing were missing as a result of a police mistake.  Defense counsel objected and argued that no evidence had been presented to show that the items were missing because of a police mistake and that the items could just as easily have been missing because of police misconduct.  The trial court judge sustained the objection and cautioned the prosecutor against arguing facts that were not in evidence.  The Michigan Court of Appeals held that because the trial court sustained the objection, Petitioner

19

failed to establish that he was prejudiced by the prosecutor's comments.  <u>Kelly</u>, slip op. at 6.
The Court finds that, examining the totality of the circumstances, the prosecutor's comment
regarding the missing evidence did not prejudice Petitioner and shall deny relief on this claim.

The Court now turns to Petitioner's final claim of prosecutorial misconduct, that the
prosecutor improperly denigrated defense counsel and Petitioner.  As discussed above, because
the Michigan Court of Appeals held that this claim was not preserved for review based upon
Petitioner's failure to object at trial, the claim is procedurally barred from habeas review unless
Petitioner establishes cause for the default and actual prejudice as a result of the alleged violation
of federal law or unless he has demonstrated that failure to consider this claim will result in a
fundamental miscarriage of justice.  <u>Coleman</u>, 501 U.S. at 750.

In the instant case, Petitioner claims that his trial attorney's ineffectiveness constitutes
"cause."  The Supreme Court has held that "cause" under the cause and prejudice standard must
be "something external to the petitioner, something that cannot fairly be attributable to him."
<u>Id.</u>, at 753.  The Court further held that "[a]ttorney ignorance or inadvertence is not 'cause'
because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the
litigation, and the petitioner must bear the risk of attorney error. . . . Attorney error that
constitutes ineffective assistance of counsel is cause, however."  <u>Id.</u> at 753-54 (internal citations
omitted). To establish ineffective assistance of counsel, Petitioner must show that counsel's
performance was deficient and that he was prejudiced by the deficiency.  <u>Strickland</u>, 466 U.S. at
687.

Petitioner argues that counsel was ineffective in failing to object to the prosecutor's
remarks which denigrated defense counsel and the defense.  Petitioner objects to what Petitioner

characterizes as the prosecutor accusing defense counsel of trying to mislead the jury.  In addition, Petitioner claims that the prosecutor's statement in closing that the defense wanted the jury to believe that the victim was a person society could afford to lose improperly denigrated the defense and defense counsel.  The Michigan Court of Appeals, although finding that these claims were not preserved for review, nevertheless addressed their merits.  The Michigan Court of Appeals held that the prosecutor's comments that defense counsel was trying to mislead the jury were not improper because, taken in context, they were a response to defense counsel's argument in closing that the prosecutor had failed to present evidence regarding certain tangential matters.  Kelly, slip op. at 5.  In addition, the Michigan Court of Appeals held that the prosecutor's characterization of the defense strategy as asking the jury to believe that the victim was a person society could afford to lose, did not amount to a personal attack on the defense. Id.  The Court has reviewed the prosecutor's comments which Petitioner labels objectionable and finds that, while certain of the comments could have been more carefully articulated, the state court's conclusion that they did not constitute misconduct was not contrary to or an unreasonable application of Supreme Court precedent.

Petitioner has failed to demonstrate that the prosecutor engaged in misconduct.  Thus, the Court concludes that trial counsel was not ineffective in failing to object to the prosecutor's conduct.  Because Petitioner has failed to establish that his trial attorney rendered ineffective assistance of counsel, he has failed to show cause for his procedural default.  This prosecutorial misconduct claim is therefore barred unless he can establish that a constitutional error resulted in a fundamental miscarriage of justice.  Schlup v. Delo, 513 U.S. 298 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural

21

default to a petitioner's innocence.  <u>Schlup</u>, 513 U.S. at 321.  Thus, Petitioner must assert a

constitutional error along with a claim of innocence.  "To be credible, such a claim requires

petitioner to support his allegations of constitutional error with new reliable evidence -- whether

it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

evidence -- that was not presented at trial."  <u>Id.</u>  This evidence "must show that it is more likely

than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt."

<u>Id.</u> at 327. Petitioner fails to present new, reliable evidence in light of which no reasonable juror

would have found him guilty.  Therefore, this prosecutorial misconduct claim is barred from

consideration by procedural default.

## V.  Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus

is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.


s/Nancy G. Edmunds_____
Nancy G. Edmunds
United States District Judge

Dated:  October 6, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on
October 6, 2006, by electronic and/or ordinary mail.

s/Carol A. Hemeyer_____
Case Manager

22